IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **International Union of Operating Engineers, Local 150, AFL-CIO,** )<br>)<br>) | |
| **Plaintiff,** )<br>) | |
| vs. ) | Case No. 17 C 76 |
| )<br>**R.W. Dunteman, Inc.,** )<br>) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Local 150 of the International Union of Operating Engineers, seeks to vacate an arbitration award issued by arbitrator Brian Clauss on October 6, 2016, denying Local 150's grievance against R.W. Dunteman, Inc. (RWD). The parties have filed cross motions for summary judgment.

### Background

The Court takes the following facts from the arbitrator's award, as well as from Local 150's exhibits filed in connection with its motion for summary judgment.

**1. Contracts**

As of at least June 1, 1987, Local 150 and the Mid-America Regional Bargaining Association (MARBA) entered into a "heavy and highway and underground construction" agreement (HHUA). Pl.'s Statement of Uncontested Material Facts, Tab (Pl.'s Tab) 2 (HHUA). The HHUA makes clear that the "terms and conditions of [the HHUA] relating to the employment of employees have been arrived at by means of collective bargaining and the Agreement shall be deemed to be the Agreement of each

of the MARBA Members and shall be binding on all parties hereto and their respective members." HHUA, § INTENT.

On June 1, 1987, Local 150 and RWD signed a memorandum of agreement (MOA) in which RWD agreed to be bound by the terms in the HHUA. The MOA states:

> This agreement shall continue in effect from year to year thereafter and specifically adopt any master agreement entered into between [Local 150] and [MARBA] subsequent to the expiration date of the Master Agreement [the HHUA] herein adopted unless notice of termination or amendment is given in the manner provided herein.

Pl.'s Tab. 3 (MOA) at 1. To date, neither Local 150 nor RWD have terminated the agreement.

Unlike the MOA between Local 150 and RWD, there have evidently been several renditions of the HHUA. The version relevant to this case was signed on June 1, 2010. Pl.'s Tab 1 (Arb. Hrg. Transcript) at 45:13-46:11. The HHUA contains certain safeguards for union employees. Specifically, an employer bound by the HHUA agrees to hire only union subcontractors for projects involving construction work. The agreement states:

> The Employer agrees that he will not contract or subcontract any work covered by the Scope of Work of this Agreement and/or work coming under the occupational jurisdiction of the Union to be done at the site of construction, alteration, painting, or repair of a building, structure, or other work, except to a person, firm or corporation, party to the applicable current labor agreement with the Union.

HHUA, Art. I § 4.

The HHUA does not expressly define Local 150's "occupational jurisdiction." It defines "scope of work" as follows:

2

**SECTION 7 – SCOPE OF WORK**

    This Agreement shall apply to work classifications and operations incidental thereto as are herein generally and specifically described: excavating of all types, paving of all types, bridges, culverts, roads, streets, airport runways, ramps, grading, resurfacing, grade separations, overpasses, underpasses, curbs, gutters, sidewalks, parking, areas, skyways, caissons, and all other highway construction work, underground and utility work of all types, sewers, subways, tunnels, water mains, piping, pipe jacking, headwalls, outfall structures, junction chambers, concrete construction, conduits, drainage, sheeting, dewatering, pile driving and all other underground utility work, heavy construction work of all types, dams, cofferdams, dock walls, shore protection and all land-based operations involving lakes, harbors, and river improvements; snow removal, flood controls, civil defense, fire and catastrophe operations of all types, landscaping, black dirt and black dirt fields, and wrecking of all types, dismantling or demolition of any building structure, railroad spurs from main line to building line, all farm and land improvements and all assembly and disassembly of all equipment on the job site coming under the jurisdiction of the operating engineers.

HHUA, Art. I § 7.

The HHUA also outlines the procedure for resolving claims that arise out of the agreement. The HHUA states:

For the purpose of this Agreement, the term "grievance" is any claim or dispute involving an interpretation or application of the Agreement by an employee, or an Employer, or the Union, or the Association that one of the other of the aforesaid persons or organization is violating or has violated this Agreement.

HHUA, Art. XIII §1. The HHUA provides for resolution of grievances by an arbitrator or a joint grievance committee. It states:

The Joint Grievance Committee shall have the power to resolve all grievances before it and shall have the right to examine all records of the Employers and employees as is reasonably necessary to resolve the grievance. The Joint Grievance Committee shall have the authority to determine and assess remedies for violations of this Agreement, including, but not limited to an award of back pay and equivalent benefits to the Local 150 Assistance Fund.

3

*Id.* In resolving a grievance, "[n]either the Joint Grievance Committee nor an arbitrator shall have any authority to add to, detract from, or in any way alter the provisions of this Agreement or make a new Agreement." *Id.*

The final section of the HHUA states, "[t]his represents the entire Agreement of the parties, it being understood that there is no other agreement or understanding, either oral or written." HHUA, Art. XXIII. It also states that the agreement is effective until May 31, 2017, and continues thereafter on a yearly basis unless a party gives notice of termination at least 60 days before the annual expiration date. *Id.*

### 2. RWD's project

Sometime in 2015, the City of Chicago awarded RWD a seventeen million dollar contract for a road construction project. *See* Pl.'s Tab 4; Pl.'s Tab 6 at 1. RWD and the City signed a project labor agreement (PLA) to which Local 150 was also a signatory. Arb. Hrg. Transcript at 89:19-90:5. At a pre-job conference with RWD, Local 150 discovered that RWD had hired a non-union subcontractor—C3 Corporation—to perform the site layout survey work on the project. *Id.* at 94:3-95:23; Pl.'s Tab 29 (Arb. Award) at 3. Local 150 notified RWD that survey work fell within its occupational jurisdiction and informed RWD that it was required to hire a union subcontractor to perform the survey work on the project. Arb. Hrg. Transcript at 94-95; Pl.'s Tab 6 at 7. RWD disagreed and continued to work with C3. *Id.*

On July 27, 2015, Local 150 filed an administrative complaint with the City of Chicago regarding RWD's use of non-union survey workers, alleging that RWD violated the PLA. Pl.'s Tab 9 at 1. Local 150 asked the City to instruct RWD to remove C3 from the project. *Id.* at 2. On October 15, 2015, the City notified RWD that it violated its

4

contract with the City when it hired non-union survey workers. *See* Pl.'s Tab. 5. The City wrote, "it is the position of the City that the performance of certain survey work during actual construction constitutes 'construction' work under the terms of the PLA, and therefore, in accordance with your contract with the City, must be performed by union contractors." *Id.* On October 23, 2015, RWD responded to the City, saying, "[RWD is] not in violation of the PLA. The project will continue with C3 [] unless their removal is ordered, in writing to our office, by the Chicago Department of Transportation." Pl.'s Tab 13. The City did not take any further action. *See* Arb. Award at 18.

**3.    Arbitration**

On September 14, 2015, Local 150 filed a grievance pursuant to the procedure outlined in the HHUA. *See* Pl.'s Tab 10. On November 20, 2015, Local 150 made a demand for arbitration. Pl.'s Tab 11. On June 8, 2016, RWD and Local 150 attended an arbitration hearing, presided over by arbitrator Clauss. The parties stipulated that the issue to be determined by the arbitrator was, "[d]id [RWD] violate Article I, Section 4 of its [HHUA] with Local 150 when it subcontracted surveyor work performed at the site of construction to a non-union surveying company?" Arb. Award at 7. Local 150 argued that survey work fell within its occupational jurisdiction and that, pursuant to the HHUA, RWD was required to hire Local 150 for work falling within its jurisdiction. *Id.* at 8-12. Local 150 cited to, among other things, its constitution, which included survey work under its jurisdiction. *Id.* at 10-11. RWD argued that survey work did not fall within Local 150's occupational jurisdiction because survey work does not include heavy machinery. *Id.* at 12. In support, RWD noted that Local 150 and similar unions had not

5

objected to RWD's use of non-union survey workers in the past. *Id*. RWD asserted that because the HHUA does not define Local 150's occupational jurisdiction, Local 150 was required to negotiate with RWD to expand its jurisdiction to include survey work. *Id*. at 14.

On October 6, 2016, the arbitrator denied Local 150's grievance. *Id*. at 15. He recognized that RWD agreed to be bound by the HHUA. *Id*. at 4, 8, 15. The arbitrator noted that the HHUA does not define Local 150's occupational jurisdiction but that article one, section seven of the HHUA provides a "non-exhaustive list" of the work falling within Local 150's "scope of work." *Id*. at 16. The arbitrator determined that, because the HHUA was silent on the inclusion of survey work, Local 150 had to present evidence of its and RWD's mutual intent to include survey work within Local 150's scope of work. *Id*. The arbitrator wrote:

> The [HHUA] does not mention survey workers as being covered by the agreement. However, Article I, Section 7 does not state that it is an exhaustive list of covered workers. Instead, it states that the "Agreement shall apply to work classifications and operations incidental thereto as are here in general and specifically described . . ." Thus, when [Local 150] asserts a non-specified work classification and/or operation, there must be a determination as to whether that classification or operation was intended by the parties to be include[d].

*Id*.

The arbitrator considered extrinsic evidence to resolve the issue of intent. He dismissed the bulk of Local 150's evidence, stating that it "does little to shed light on the parties' mutual intent." *Id*. In contrast, the arbitrator found that RWD "presented competent evidence showing that it has historically used nonunion survey contractors on its job sites where those workers are not specifically included in the applicable contract." *Id*. at 18. For that reason, the arbitrator concluded that there was "insufficient

6

evidence to establish that [RWD] agreed to include survey workers within [Local 150's] occupational jurisdiction at the time the [HHUA] was executed." *Id.* He therefore denied Local 150's grievance.

**4. Present litigation**

On January 5, 2017, Local 150 filed this lawsuit, seeking to vacate the arbitration award. *See* Compl. In response, RWD moved for sanctions, arguing that Local 150 did not have a good faith basis for challenging the arbitration award. Local 150 then moved for summary judgment, and RWD cross-moved for summary judgment.

## Discussion

Summary judgment is appropriate where a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, all "facts must be viewed in the light most favorable to the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Local 150 and RWD have both moved for summary judgment. Local 150 asserts that the arbitrator exceeded the scope of his powers, and it asks the Court to vacate the arbitration award. RWD, on the other hand, contends that the arbitration award is valid; it asks the Court to uphold the award and impose sanctions on Local 150 for filing this lawsuit.

Local 150 argues that the arbitrator improperly concluded that RWD did not violate article one, section four of the HHUA when it subcontracted survey work to C3, a

7

non-union survey company. Local 150 contends that the arbitrator exceeded the powers delegated to him. First, Local 150 argues that the arbitration award fails to acknowledge that the HHUA was negotiated between Local 150 and MARBA, not RWD, thus making RWD's intent irrelevant. Second, Local 150 argues that the arbitrator exceeded the scope of the HHUA by finding that an understanding of "occupational jurisdiction" between Local 150 and RWD required a written modification to the HHUA. Third, Local 150 argues that the arbitration award failed to properly consider its evidence that survey work fell within its occupational jurisdiction.

RWD, on the other hand, argues that the arbitration award should stand because it was drawn from the essence of the HHUA. RWD contends that the arbitrator identified the parties' stipulated issue, identified the relevant contract provisions, described the basis of Local 150's grievance, considered Local 150's evidence, and determined that Local 150 failed to establish that survey work fell within its jurisdiction as defined by the HHUA. RWD contends that the Court lacks the authority to vacate the arbitration award because it was based on contract interpretation and factual findings.

An arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). A court's review of an arbitration award is "extremely limited." *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 831 (7th Cir. 2016) (internal quotation marks omitted). Where an arbitration award "draws its essence" from the collective bargaining agreement at issue, a court must accept the arbitration award as legitimate. *Id.* But where an "arbitrator ha[s] exceeded the powers delegated to him by

8

the parties," a court is authorized to vacate the award. *Id.* at 832. An arbitrator exceeds his delegated powers where there is no basis in the contract to support the final arbitration award. *See id.*; *see, e.g.*, *United Food & Commercial Workers, Local 1546 v. Ill. Am. Water Co.*, 569 F.3d 750, 754-55 (7th Cir. 2009) ("The question before a federal court is not whether the arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.") (internal quotation marks omitted). For example, an arbitrator exceeds his authority when he ignores or adds language to the contract he seeks to administer. *See Int'l Union of Operating Engineers, Local 139, AFL-CIO v. J.H. Findorff & Son, Inc.*, 393 F.3d 742, 745 (7th Cir. 2004); *United Food & Commercial Workers, Local 1546*, 569 F.3d at 755 ("Misinterpretation of contractual language, no matter how clear, is within the arbitrator's powers; only a decision to ignore or supersede language conceded to be binding allows a court to vacate the award.") (internal quotation marks omitted). A court may also infer that an arbitrator exceeded the scope of his authority where "there is no possible interpretive route to the award." *United States Soccer Fed'n, Inc.*, 838 F.3d at 832 (internal quotation marks omitted).

When a court vacates an arbitration award, "the appropriate remedy is to remand the case for further arbitration proceedings," rather than making its own factual findings and legal interpretations. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001). And "[a]lthough the general rule is that a reviewing court should either enforce or vacate an arbitration award, courts have the power to remand to the arbitrator where appropriate." *United Steelworkers of Am., AFL-CIO v. Aurora Equip.*

9

*Co.*, No. 86 C 9211, 1987 WL 10990, at *7 (N.D. Ill. May 12, 1987) (internal quotation marks omitted) (citing *Young Radiator Co. v. International Union, UAW*, 734 F.2d 321, 326 (7th Cir. 1984)). For example, "[w]here the arbitrator fails to address fully the question presented to him, remand is appropriate." *Id*.

    The arbitrator's award did not draw its essence from the language in the HHUA. Section four of the HHUA states that an employer cannot employ a non-union party for any work falling under the scope of work section of the HHUA "***and/or*** work coming under the occupational jurisdiction of the Union." HHUA, Art. I § 4 (emphasis added). The arbitrator reviewed the scope of work section of the HHUA and determined that it did not include survey work. Arb. Award at 16. But when considering the other basis for a subcontracting bar under section 4—work coming under the occupational jurisdiction of the Union—the arbitrator fashioned and applied a rule not rooted in the language of the HHUA. Specifically, the arbitrator stated that when Local 150 "asserts a non-specified work classification and/or operation" other than ones found in the "scope of work" section, "there must be a determination as to whether that classification or operation was intended by the parties to be include[d]." Arb. Award at 16. And he then looked to RWD's intent in making that determination. This analysis was doubly wrong, and it departed from the language of the HHUA. First of all, there is no basis to say that "the occupational jurisdiction of the Union" has anything to do with the intent of employers. Rather, the straightforward meaning of that term appears to involve a determination made by reference to the union alone, or at least without regard to the understanding of any particular employer like RWD. Second, even if this were not the case, the arbitrator ignored the contract, essentially adding a term, when he made

10

*RWD*'s intent a determinative or even a relevant factor. The HHUA was an agreement between Local 150 and MARBA, not RWD. Thus if the arbitrator had hewed to the HHUA, there would have been no basis to consider RWD's intent—RWD simply signed onto an already-extant agreement, effectively stepping into the shoes of MARBA, the contracting party. Indeed, the arbitrator's focus on RWD's intent suggests that he relied on the MOA that RWD signed—the agreement binding RWD to the terms of the HHUA—rather than on the HHUA, the agreement that governed determination of Local 150's grievance. Reliance on the MOA is inconsistent with the HHUA's provision stating that the HHUA "represents the entire Agreement of the parties, it being understood that there is no other agreement or understanding, either oral or written." HHUA, Art. XXII.

      RWD argues that it was proper for the arbitrator to consider evidence of RWD's intent. It relies on a decision from another court in this district, *Laborers' International Union of North America Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 180 F. Supp. 3d 540 (N.D. Ill. 2016). In that case, the court upheld an arbitration award in which the arbitrator considered the parties' past dealings to determine the scope of the plaintiff's "work jurisdiction" under the collective bargaining agreement (CBA) at dispute. *Id.* at 550. The facts of the case, however, distinguish it from the present one. In *Laborers'*, the CBA specifically made reference to a separate agreement; it stated that "issues involving wages [] are governed by the **locally negotiated** collective bargaining agreement." *Id.* (internal quotation marks omitted) (emphasis added). The parties had signed a local CBA whose language conflicted with the master CBA. *Id.* The arbitrator thus necessarily and appropriately relied on the parties' past dealings to resolve the discrepancy between agreements. In this case, by contrast, MARBA and Local 150

11

agreed that the HHUA represented the parties' entire agreement, *see* HHUA, Art. XXIII, and RWD agreed to this when it signed the MOA and thereby agreed to be bound by the terms of the HHUA.

Besides asking the Court to vacate the arbitration award, Local 150 asks the Court to make a finding that survey work *does* fall within Local 150's occupational jurisdiction. This issue, however, is appropriately resolved, at least in the first instance, by an arbitrator applying the appropriate standard, not this Court.

For the reasons stated above, the Court vacates the arbitration award and remands the case for further arbitration proceedings consistent with this decision. The Court also denies RWD's motion for sanctions, because Local 150's position in this case was correct and certainly was not unwarranted by the facts or the law, as Rule 11 requires.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion for summary judgment [dkt. # 19] and denies defendant's motions for summary judgment [dkt. # 22] and sanctions [dkt. # 15]. The Clerk is directed to enter judgment in favor of plaintiff, vacating the arbitration award, and remanding the case for further arbitration proceedings consistent with this decision.

```
                                    _____
                                           MATTHEW F. KENNELLY
                                           United States District Judge
```

Date: July 13, 2017